UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Mary P.
o/b/o A.P.,

                          Plaintiff,

v.                                                                    CASE # 20-cv-00077

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

Law Offices of Kenneth Hiller, PPLC            AMY C. CHAMBERS, ESQ.
  Counsel for Plaintiff                                JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue                         KENNETH R. HILLER, ESQ.
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 LINDSAY NICOLE NORRIS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the

undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative

record is GRANTED, Defendant's motion is DENIED, the decision of the Commissioner be

REVERSED, and this matter be REMANDED for further administrative proceedings consistent with this order.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

A.P. was born on October 21, 2005 and was 8 years old, a school-age child, on the application date. (Tr. 156). Generally, plaintiff alleges A.P.'s disability consists of attention deficit hyperactivity disorder (ADHD), slow moving intestines, learning disorder, reading and writing disorder, dyslexia, and convergence insufficiency and accommodation infacility. (Tr. 160, 543-47). The alleged disability onset date is October 21, 2005. (Tr. 156).

### B.     Procedural History

On January 13, 2014, plaintiff[1] protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (Tr. 149-50). Plaintiff's application was initially denied, after which a timely request was made for a hearing before an Administrative Law Judge ("the ALJ"). On May 11, 2016, plaintiff appeared before the ALJ, P.H. Jung, by video teleconference. (Tr. 40). On June 3, 2016, ALJ Jung issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 18-36). On March 27, 2017, the Appeals Council ("AC") denied plaintiff's request for review and a civil action was timely filed. (Tr. 1-7). On June 2, 2017, plaintiff filed a Complaint in the United States District Court for the Western District of New York. (Tr. 417-50). On August 8, 2018, the court vacated the decision and remanded it to the Commissioner for further administrative proceedings. (Tr. 454). On January 17, 2019, the AC vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings consistent with the order of the court. (Tr. 455-60.) On August 1, 2019, plaintiff

---

[1] From herein the child, A.P., will be referred to as "plaintiff".

appeared with his mother at a hearing before ALJ Stephan Bell. (Tr. 328-61). On September 23,

2019, the ALJ issued a decision finding plaintiff not disabled. (Tr. 301-27). The ALJ's decision

became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. §

405(g), incorporated for SSI by 42 U.S.C. § 1383(c)(3). This action followed.

### C.    The ALJ's Decision

Generally, ALJ Bell made the following findings of fact and conclusions of law:

1. The claimant was born on October 21, 2005. Therefore, he was a school-age child on January 13, 2014, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since January 13, 2014, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: Attention Deficit-Hyperactivity Disorder (ADHD); constipation; dyslexia; eye disorders: convergence insufficiency and accommodation infacility.  (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
(a) The claimant has less than marked limitation in acquiring and using information.
(b) The claimant has less than marked limitation in attending and completing tasks.
(c) The claimant has no limitation in interacting and relating with others.
(d) The claimant has less than marked limitation in moving about and manipulating objects.
(e) The claimant has less than marked limitation in the ability to care for himself.
(f) The claimant has less than marked limitation in health and physical well-being.

6.  The claimant has not been disabled, as defined in the Social Security Act, since January 13, 2014, the date the application was filed (20 CFR 416.924(a)).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially arguments in support of the motion for judgment on the

pleadings. First, plaintiff argues the ALJ erred by failing to develop the record. Second, the ALJ

erred when failing to weigh all medical opinions. Third, the ALJ failed to identify substantial evidence supporting the Functional Equivalence finding. (Dkt. No. 7 at 1 [Pl.'s Mem. of Law]).

### B.      Defendant's Arguments

In response, defendant makes three arguments. First, defendant argues the ALJ properly developed the record. (Dkt. No. 8 at 6 [Def.'s Mem. of Law]).   Second, the ALJ properly considered the medical opinion evidence. (*Id*. at 10). Third, the ALJ properly assessed plaintiff's functional limitations and capabilities. (*Id*. at 17).

## III.     RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or

combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[2]

---

[2]   "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id.*

## IV.   ANALYSIS

Plaintiff argues the ALJ did not base the functional equivalence findings on substantial evidence because there were gaps in the record and specifically points to the lack of school records and updated opinion evidence. Indeed, this record is void of education records for four school years. However, the administrative record does contain an Individuated Education Plan (IEP) from 4th grade, dated May 4, 2015, as well as an IEP for the 8th grade, dated April 4, 2019. (Tr. 280-88, 712-20). There are no education records for 5th, 6th, or 7th grade, and no teacher questionnaires provided by any teacher from the relevant period.

Although the ALJ should be able to rely upon counsel to obtain records relevant to their client's disability claim, it is well established that an ALJ has an affirmative obligation to develop the administrative record, regardless of whether a plaintiff is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Sotososa v. Colvin*, 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) (collecting cases). More specifically, the Commissioner's regulations obligate the ALJ to obtain information about how the claimant is functioning in school and any related educational reports. *Caldwell o.b.o J.W. v. Berryhill*, 15-CV-613, 2018 WL 1081009, at *2 (W.D.N.Y. Feb. 28, 2018), *citing* 20 C.F.R. § 416.924a. The failure to make reasonable efforts to obtain updated school records has been found to be cause for remand. *Collins o.b.o. J.T.C. v. Comm'r of Soc. Sec.*, 18-CV-6795, 2020 WL 1302311, at *2 (W.D.N.Y. Mar. 19, 2020) (collecting cases).

Notably, the April 2019 IEP references a February 2017 psychological evaluation but only the Weschsler Intelligence Scale for Children V (WISC-V) and Woodcock-Johnson (WJ) IV

Achievement Test scores are reported in the IEP. (Tr. 713). Unfortunately, the ALJ cites the WISC-V test as evidence of a less than marked limitation in the domain of acquiring and using information but this domain includes more than intellectual functioning abilities. (Tr. 314). *See* 20 CFR 416.926a(g) and SSR 09-3p. ALJ Bell observes that the IEP also notes plaintiff has "significant delays in reading comprehension and written expression, which adversely affects academic performance" but does not cite the WJ scores or any evidence defining the term significant. (Tr. 314). The ALJ neglected his duty to develop the record and rather relied on his lay judgement of the severity of the impairments on the plaintiff's academic performance. Although he cites grades from the sole report card in the file, those were obtained with the supports provided by the structured environment under the IEP.

The Court also recognizes the ALJ's failure to discuss the vision impairments in all the affected domains. *See* 20 CFR 416.926a(c) and SSR 09-1p, Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule—The "Whole Child" Approach, 2009 WL 396031, at *2 (S.S.A. Feb. 17, 2009). The ALJ found the severe eye disorders of convergence insufficiency and accommodation infacility but only discussed those conditions under the domain of health and physical well-being despite specifically citing records that this impairment causes an inability to efficiently take in and process information through the visual system. Further, the ALJ discussed only under that domain the deficiencies in focusing ability and eye coordination skills may increase the time necessary copying from the board, induce fatigue, avoidance of close work and may result in reduced reading comprehension as well as shortened attention span. (Tr. 321, *citing* 242-243). Under the whole child approach this impairment must be rated in any and all of the domains that the child uses to do those activities. Therefore in this case, the vision

impairments should also be considered under the domains of acquiring and using information as well as attending and completing tasks.

The lack of school records is compounded by the lack of opinions. The ALJ's summation indicating his reliance upon various psychological examinations and various school records in making his findings is not the equivalent of substantial evidence. The most recent medical source opinion is from 2016, where in Dr. O'Connor, O.D. skipped the section on limitations in the domains of functioning. (Tr. 298-300). The only consultative examiner opinions are from 2014, which were afforded great weight in the ALJ's 2019 decision despite the fact that at the time plaintiff only had a Section 504 Accommodation Plan[3] at school. (Tr. 312, *Citing* 224, 229; Tr. 189, 208, 218). Defendant correctly contends an ALJ is not required to obtain additional evidence when the record is adequate to make a determination of disability. However, in childhood disability cases adjudicators are directed to develop information from a plaintiff's medical source or purchase a consultative examination to get a clear picture of the child's current functioning within the six functional equivalence domains. *See* SSR 09-2p, Title XVI: Determining Childhood Disability – Documenting a Child's Impairment-Related Limitations. Undoubtedly children change quickly, particularly when receiving services, and updated testing is frequently performed. Here plaintiff would have an IEP meeting with assessments done on an annual basis, but they are not in the record. In May 2014, neuropsychologist Dr. Santa Maria, whom the ALJ cited extensively, concluded plaintiff would need a re-evaluation in 2.5-3 years to measure cognitive development. (Tr. 278). Both parties brought up the Gray Oral Reading Tests- Fifth Edition (GORT-5) test results referenced in the 2019-2020 IEP. Plaintiff contends the ALJ failed to discuss the important fact that the score was two standard deviations below the mean (Dkt. No. 7 at 16),

---

[3] A reference to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

9

whereas defendant responds the summary does not state how far below the mean the scores are and that classification of being in only the second percentile was not evidence of a marked impairment. (Dkt. No. 8 at 13). Indeed, this highlights the issue with only summaries of testing being relied upon by the ALJ. Additionally, there is no evidence of any updated testing but for the 2017 WISC-V and WJ test scores summarized on the 2019-2020 IEP. Therefore, although ALJs are not required to obtain updated medical expert opinion evidence when determining if a child's impairments functionally equals the listings, they are not permitted to rely on raw evidence or stale standardized tests or evaluations.

As stated above, the record also does not contain a teacher questionnaire. Teachers are not acceptable medical sources, but the regulations assert the Agency will ask for information from teachers to describe functioning in school.  *See* 20 CFR 416.926a(b)(3). Teachers are classified as "non-medical sources" and regulations explain that they are valuable sources of evidence for assessing impairment severity and functioning. *See* SSR. 06-03p, Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Case law also states an ALJ should consider all relevant evidence in determining a child's functioning, including information from the child's teachers. *White o/b/o T.R.W. v. Berryhill*, 2019 WL 1367382, at *3 (W.D.N.Y. Mar. 26, 2019) (*quoting Swan v. Astrue,* 2010 WL 3211049, *6 (W.D.N.Y. 2010)*; citing Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007)). There is no evidence there was ever an effort to obtain a teacher questionnaire at either the first hearing or after the Federal Court remand. Defendant unsuccessfully argues the two IEPs in the record are sufficient for providing all information that is required for academic functioning. The IEPs alone do not compare the functioning of plaintiff to other children of the same age without accommodations. SSR 09-2p

specifically warns that the IEP can provide useful information about a child's functioning but the underlying purpose of those documents is not to determine disability under the SSA rules but to design services and supports for a child to maximize growth and participate in the general education curriculum. Further, the goals in an IEP are set to foster a sense of accomplishment. In sum, just two IEPs over the course of five years of special education and one report card is not substantial evidence for assessing learning disabilities and getting a clear picture of the plaintiff's functioning in a school setting.

Plaintiff has additional argument however, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary the Court declines to reach those issues. *Morales v. Colvin*, No. 13-CV-06844 (LGS)(DF), 2015 U.S. Dist. LEXIS 58246, at *80 (S.D.N.Y. Feb. 10, 2015) (The court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dost. LEXIS 58203 (S.D.N.Y. May 4, 2015).

**ACCORDINGLY, it is**

    **ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

    **ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

    **ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 14, 2021                                    *J. Gregory Wehrman*
Rochester, New York                                   HON. J. Gregory Wehrman
                                                United States Magistrate Judge